## THE KING *vs.* LEONG TIAM.

### APPEAL FROM INTERMEDIARY COURT.

### JULY TERM, 1888.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

Under the statute, prohibiting a Chinese passenger not furnished with a permit or passport from the Minister of Foreign Affairs from landing, or attempting to land, in this Kingdom:

Held, that the return passport must have been issued to the individual who may return upon it.

The presenting of a passport to the Customs officer was an attempt to land, and the passport not appertaining to the defendant, such attempt falls under the penalty of the law.

*In Re Chow Bick Git*, 4 Hawn., 385, affirmed.

### OPINION OF THE COURT, BY McCULLY, J.

This case comes up by appeal from a Justice of the Supreme Court holding what is known as the Intermediary Court or Oahu, upon the following certificate of findings and rulings, viz:

"On the evidence adduced herein, I find that the defendant in Hongkong, China, bought the passport herein filed, and came to this Kingdom on the steamer City of Peking; and while said steamer was in the port of Honolulu, the thirteenth day of May last, with the defendant on board, the defendant

on demand presented the said passport to a Custom House officer, and afterwards was sent by the Board of Health to the Quarantine Grounds, near Honolulu harbor; also, that the defendant is a Chinaman.

" Wherefore, I adjudge and rule that the defendant is guilty as charged, and that the sentence of the Police Court herein is affirmed, with costs.

" From which ruling and judgment the defendant appeals to the Supreme Court in Banco, on the grounds that the facts so found do not in law constitute the offense charged."

The charge is of unlawfully attempting to land at the port of Honolulu without a legal permit, contrary to the provisions of Section 3, of Chapter XXVIII., of the Laws of 1887, viz. :

" Section 3.   If any master of a vessel shall land, or attempt to land, any Chinese without such permit (a permit to enter the Kingdom issued by the Minister of Foreign Affairs) as aforesaid, he shall be liable, on conviction, to a penalty of two hundred dollars for each Chinese unlawfully landed, or attempted to be landed ; and such passenger landing, or attempting to land, shall be liable, on conviction, to a penalty of fifty dollars," etc.

The passport filed is of date March 12, 1885, and reads that " permission is hereby granted to Ah Firun (Chinese characters), formerly residing at Waimanalo, Oahu, to enter the ports of this Kingdom on his return from China." It is not doubted that this passport would have legally admitted to the Kingdom the person to whom it was issued.   The defendant had bought it in Hongkong, and was not the person named therein.   On this we hold, without question, that for the bearer it was not a passport. By the regulation of March 25, 1884, under which it is expressed that it was issued, passports were issued only to Chinese residents in the Kingdom, and desiring to go abroad and return here, and (2) to the wives and families of Chinese residents here.   For these passports a fee of one dollar was charged. This forbids the construction that they were issued for the purpose of revenue.   It can only be held that it was for the purpose of regulating and restricting the entry of Chinese into this

Kingdom. This passport was a permit to the person named therein, who had resided here at a place specified, going hence, to re-enter the Kingdom. It is altogether unlike a passenger-ticket, which might be held to be assignable as a contract to carry one passenger over a specified route for a money consideration paid. The passport is not bought of the Government; it is issued only to a person who is of the description of those to whom passports may be issued, who thereupon pays the official fee, which is for the paper, not for the privilege.

The question, then, of this case is whether the defendant, being without a permit to land, did attempt to land ?

The facts found of the purchase of the passports in Hongkong and coming into this harbor on board the steamer, tend to prove an intent to enter the Kingdom. On demand of a Custom House officer, he presented the passport to him. This is further proof of an intent to enter the Kingdom. As far as possible the defendant made use of the passport, and the only use of the passport being to procure admission to the Kingdom, it must be considered that the defendant's intent to enter is established.

Our Statute on Attempts, Chapter XLIV., of the Penal Code, prescribes that a mere preparation of the means of committing an offense, nothing being done in execution of the intent to commit the same, is not an attempt to commit the same. Purchasing the passport and taking passage for Honolulu was a mere preparation of the means. The offense is landing, coming ashore, entering the Kingdom, or attempting to do so. The defendant would have committed no offense if he had not attempted to leave, or left the steamer. So continuing on the steamer as he might, and leaving the harbor on her and proceeding to San Francisco, he would not have violated the statute if he had not done an act towards committing and in part execution of the intent. But any act done in execution of the intent constitutes an attempt, whether it is successful or is frustrated.

The act relied on as an attempt is presenting the passport. It is a fair inference from the statement of facts found, and from

the law, that a proper officer was demanding who of the passengers claimed a right to land by the possession of a passport, and that the defendant presented this passport as giving him the right to land. His intent was to land, and his attempt was by presenting the passport, and by this means he succeeded in landing. If he had not presented the passport the Board of Health would not have thereafter taken him ashore. If it had been discovered that the passport presented was not a passport permitting the defendant to enter the Kingdom, he would not have been permitted to land. By law the vessel which brought him was bound to take him away. His attempt would have been frustrated.

It does not seem material to consider in this case whether the successful attempt to land was merged in the offense of landing. This conviction may well lie on the proof of offering a passport which was sufficient to procure that the Board of Health should thereafter cause him to be taken from the ship. The question whether he had effected an entry into this Kingdom by being sent to the Quarantine Grounds, near Honolulu, does not affect the character of the act which we hold to be the attempt. Getting sent to the Quarantine Grounds was a step towards entering the Kingdom. He might have been stopped there to be re-embarked on the steamer, as the statute provides, and by the authority of the case of *Chow Bick Git*, 4 Hawn., 385, he would have been legally barred at the threshold of the Kingdom, and could not have been brought in by writ of *habeas corpus*.

We hold that the conviction was legal.

*A. P. Peterson* (Deputy Attorney-General), for the Crown.

*A. S. Hartwell*, for defendant.